IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK J. KENNEDY,                                    No. 6:17-cv-00988-HZ

       Plaintiff,

   v.

COMMISSIONER OF SOCIAL                             OPINION & ORDER
SECURITY,

       Defendant.


Richard F. McGinty
McGINTY & BELCHER, ATTORNEYS
P.O. Box 12806
Salem, Oregon 97301

     Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Renata Gowie
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Sarah L. Martin
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

HERNANDEZ, District Judge:

Plaintiff Mark Kennedy brings this action seeking judicial review of the Commissioner's final decision to deny disabled child's insurance benefits. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). I reverse the Commissioner's decision and remand this case for an award of benefits.

## PROCEDURAL BACKGROUND

Plaintiff applied for child's insurance benefits in November 2011, alleging an onset date of February 28, 1994. Tr. 234-37, 242-43. His application was denied initially and on reconsideration. Tr. 74-78, 99, 116-20 (Initial); Tr. 80-86, 125-29 (Recon.). On September 25, 2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr. 46-73. On November 6, 2013, the ALJ found Plaintiff not disabled. Tr. 87-104. On May 8, 2015, the Appeals Council remanded the case back to the ALJ. Tr. 105-09.

On December 8, 2015, a different ALJ conducted a second hearing. Tr. 32-43. Plaintiff's counsel appeared at the hearing, but Plaintiff himself did not. Tr. 32-34; *see also* Tr. 16 (Mar. 2016 ALJ decision noting that Plaintiff waived his right to appear and offer new testimony, but that Plaintiff's representative appeared, new exhibits were entered into the record, and the ALJ would rely on Plaintiff's testimony from the earlier hearing). In a March 17, 2016 decision, the ALJ found Plaintiff not disabled. Tr. 13-31. The Appeals Council denied review. Tr. 1-4.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on having Asperger's Syndrome, Tourette's Syndrome, attention deficit disorder, and obsessive compulsive disorder. Tr. 260. At the time of the September 25, 2013 hearing, he was forty-one years old. Tr. 50. He is a college graduate and has no past relevant work experience. Tr. 52, 69.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yucker*t, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets his burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not turned twenty-two years old before his alleged onset date and had not engaged in substantial gainful activity since his alleged onset date. Tr. 18. Next, at step two, the ALJ determined that before age twenty-two, Plaintiff had severe impairments of severe adjustment disorder consistent with Asperger's Syndrome, attention deficit disorder, Tourette's Syndrome, obsessive compulsive disorder, and adjustment disorder with severe anxiety and depression. Tr. 18-19. However, at step three, the ALJ found that Plaintiff's impairments did not meet or equal, either singly or in combination, a listed impairment. Tr. 19-20.

At step four, the ALJ concluded that before age twenty-two, Plaintiff had the RFC to

perform a full range of work at all exertional levels.  Tr. 20.  However, Plaintiff had the

following non-exertional limitations: (1) he was limited to simple, routine tasks consistent with

unskilled work and a reasoning level of two as defined by the Dictionary of Occupational Titles

(DOT); (2) he was limited to occasional interaction with supervisors and coworkers but no

interaction with the public, to include, especially, children; (3) he cannot be exposed to cleaning

fluid solvents, dust, smoke, fumes, odors, and loud noises; (4) he would be off task nine percent

of an eight-hour day in addition to normal breaks; (5) he would be absent one day per month; and

(6) he was limited to goal-oriented work and was unable to perform at a production rate pace.

Tr. 20-24.  Because Plaintiff has no past relevant work, the ALJ moved to step five.  With this

RFC, the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers

in the economy such as assembler and garment sorter.  Tr. 24-25.  Thus, the ALJ determined that

Plaintiff is not disabled.  Tr. 26.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (internal

quotation marks omitted).  The court considers the record as a whole, including both the

evidence that supports and detracts from the Commissioner's decision.  *Id.*; *Lingenfelter v.

Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than

one rational interpretation, the ALJ's decision must be affirmed."  *Vasquez*, 572 F.3d at 591

(internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff asserts that the ALJ made the following errors: (1) rejecting Plaintiff's subjective testimony as not credible; (2) creating ambiguity about which of Plaintiff's impairments are severe at step two; (3) improperly rejecting the opinions of treating practitioners; (4) failing to find that Plaintiff had a listed impairment at step three; (5) improperly rejecting lay witness testimony; and (6) failing to address a conflict between the DOT and the jobs identified by the vocational expert.

I.  Plaintiff's Credibility

The ALJ is responsible for determining credibility.  *Vasquez*, 572 F.3d at 591.  Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (ALJ engages in two-step analysis to determine credibility:  First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged"; and second, if the

claimant has presented such evidence, and there is no evidence of malingering, then the ALJ

must give "specific, clear and convincing reasons in order to reject the claimant's testimony about

the severity of the symptoms.") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations,

the ALJ may properly consider several factors, including the plaintiff's daily activities,

inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and

relevant character evidence.  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may

also consider the ability to perform household chores, the lack of any side effects from prescribed

medications, and the unexplained absence of treatment for excessive pain.  *Id.*; *see also*

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors

in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation,

such as the claimant's reputation for lying, prior inconsistent statements concerning the

symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

and (3) the claimant's daily activities.") (internal quotation marks omitted).

As the Ninth Circuit explained in *Molina*;

> In evaluating the claimant's testimony, the ALJ may use ordinary techniques of
> credibility evaluation.  For instance, the ALJ may consider inconsistencies either
> in the claimant's testimony or between the testimony and the claimant's conduct,
> unexplained or inadequately explained failure to seek treatment or to follow a
> prescribed course of treatment, and whether the claimant engages in daily
> activities inconsistent with the alleged symptoms[.]  While a claimant need not
> vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit
> a claimant's testimony when the claimant reports participation in everyday
> activities indicating capacities that are transferable to a work setting[.]  Even
> where those activities suggest some difficulty functioning, they may be grounds
> for discrediting the claimant's testimony to the extent that they contradict claims

of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotation marks omitted).

The ALJ cited the appropriate credibility analysis. Tr. 23-24. The ALJ then determined that although Plaintiff has mental health impairments affecting his level of functioning, there was no objective evidence from the relevant time period consistent with his allegations. Tr. 23; *see also* Tr. 24 (finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision").

The ALJ found that Plaintiff's subjective symptom allegations were inconsistent with "the intensity, persistence and functionally limiting effects of the symptoms demonstrated in the medical record of evidence" and with Plaintiff's activities of daily living. Tr. 24. Defendant characterizes the ALJ's first reason as an inconsistency with the "objective medical evidence." Def.'s Brief 13, ECF 16. Lack of support in the objective medical record is one reason an ALJ may put forth to support a negative credibility determination. 20 C.F.R. § 404.1529(c). It may not be the sole reason, however. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Here, however, as indicated below, the record lacks objective evidence in the form of diagnostic testing or mental status evaluations. And, the ALJ's statement does not refer to objective medical evidence but rather to the symptoms described in the medical record of evidence. This suggests that the ALJ

referred not to objective medical testing but to subjective symptoms reported by Plaintiff, or perhaps a family member, to a practitioner who recorded that report in a medical record.

Regardless, however, of whether the intended reference is to an inconsistency with the objective medical evidence or with a reported subjective symptom in a medical record, the ALJ failed to provide sufficient specificity to meet the required standard. "[G]eneral findings are insufficient." *Treichler v. Comm'r*, 775 F.3d 1090, 1103 (9th Cir. 2014) (internal quotation marks omitted). The ALJ is required to "explain what evidence undermines the testimony." *Id.* (internal quotation marks omitted); *see also Scott v. Colvin*, No. 3:13-cv-00502-HZ, 2014 WL 1096200, at *7 (D. Or. Mar. 18, 2014) (in regard to lay witness testimony, while the ALJ "may reject such testimony based on lack of support by the objective medical record, there still must be sufficient discussion of that issue"; noting that the ALJ's finding that lay testimony was inconsistent with "the bulk of the medical evidence of record" was insufficient to allow meaningful review). Here, the ALJ failed to identify what particular "symptoms demonstrated in the medical record of evidence" he refers to. Thus, I do not consider this reason as a valid basis upon which to reject Plaintiff's testimony.

As to Plaintiff's activities of daily living, Plaintiff testified that during the relevant time period he was a student at Oregon State University (OSU). Tr. 51-58. He lived with his parents who drove him to and from school. Tr. 51. He took four classes his first quarter but determined that was too many. Tr. 51-52. He then took no more than two classes at a time. *Id.* He attended for five or six years, obtaining a bachelor's degree in mathematical science in approximately 1995 or 1996. Tr. 52-53. He graduated with a 3.0 to 3.3 grade point average. Tr. 54. He attended classes each day and believed he took all required tests. Tr. 53. He had obsessive compulsive

disorder (OCD) at the time. *Id.* When asked if the OCD interfered with his ability to go to college, Plaintiff answered by stating that he was worried about gum under the desks. *Id.* That concern made him look under the classroom seats before sitting in one of them to make sure there was no gum. Tr. 53-54. If he found gum, he tried to avoid sitting in that seat. *Id.* Once a seat was checked, however, he would sit down. *Id.* He always found a seat that was okay. *Id.* He never missed any classes because he could not sit down in the seat. *Id.* Plaintiff also needed a note taker as a result of his attention deficit disorder which interfered with his ability to pay attention. Tr. 54. He also had accommodations of being allowed to take open-book examinations and extra time to take them. Tr. 55. On follow-up questioning by counsel during the hearing, Plaintiff reiterated that the main problem from his OCD during the relevant time period was mostly being worried about gum under the desk and flies. Tr. 56. He was also allergic to cigarette smoke. *Id.* He is afraid of birds. Tr. 56-57.

The ALJ described Plaintiff's allegations as "his OCD prevented him from being around people and touching objects where people have been[.]" Tr. 24. He then rejected Plaintiff's testimony as "not fully credible based on his ability to attend college." *Id.* The ALJ explained that while Plaintiff's college experience was more limited than his peers, there "is no objective evidence showing that he would have been unable to perform a simple, repetitive, and routine job with few demands. Accordingly, the claimant's statements are not fully credible regarding the severity of his conditions." *Id.*

In the credibility discussion, the ALJ provides no citations for his description of Plaintiff's allegations. *Id.* Earlier in the opinion, the ALJ noted that in Plaintiff's October 2011 Adult Function Report, Plaintiff reported having difficulty paying attention, not driving a car because it

made him nervous, and being fearful of germs, cigarette smoke, garbage, and animal waste. Tr. 20 (citing Tr. 251, 254). The ALJ also cited to that same report where Plaintiff indicated his conditions adversely affected his ability to walk, climb stairs, and concentrate. *Id.* (citing Tr. 253). The ALJ recited portions of Plaintiff's hearing testimony, including that he lived with his parents during college, he took only two classes per quarter, and received special accommodations for taking notes and taking tests. Tr. 20-21. The ALJ mentioned Plaintiff's testimony that while taking classes, he checked the seats for gum. Tr. 21. But, the ALJ noted, Plaintiff testified that he "did not believe that he ever missed a class because he could not sit down." *Id.*

The source of the ALJ's characterization of Plaintiff's allegations as preventing him from being around people and touching objects where people have been is unclear. The specific allegations cited by the ALJ earlier in the opinion do not indicate that Plaintiff alleged that he could not be around people. The specific allegations cited earlier in the opinion do not indicate that Plaintiff could not touch objects where people had been. While other evidence in the record might indicate that these are problems for Plaintiff, Plaintiff's own testimony, at least as cited by the ALJ, does not focus on these particular issues.

Assuming that the ALJ's description of Plaintiff's subjective allegations is accurate, the ALJ's credibility finding is still problematic. First, the ALJ failed to address several other specific allegations made by Plaintiff. Plaintiff testified that he had a note taker because he had attention problems. Plaintiff testified that his parents drove him to school. Plaintiff testified that he took fewer courses than normal and took five or six years to complete his degree. Plaintiff also alleged that he does not bathe often, his parents need to remind him to comb his hair and to

encourage him to do chores, and that his mother handles the checkbook. Tr. 250, 252. Moreover, given that the relevant period of time is many years ago and before Plaintiff reached age twenty-two, consideration of Plaintiff's mother's testimony regarding how he completed college is important. She testified that she organized his notebook, arranging things so that he would be able to locate his homework to turn in. Tr. 63. She had to explain that when the teacher asked for homework, he was to take it out of a particular pocket of the notebook and hand it to the teacher. *Id.* Plaintiff's parents tutored him every night. Tr. 63-64. Plaintiff's mother kept him on schedule. *Id.*; *see also* Tr. 67 ("we pretty much had to schedule his life" and provide him with a "supportive living environment").

The ALJ did not expressly discuss the credibility of Plaintiff's allegations of problems with concentration or attention. And, the ALJ glossed over the numerous accommodations Plaintiff received which allowed him to obtain a college degree. The ALJ referred generally to "some accommodations" and noted that Plaintiff's "college experience was more limited than his peers." Tr. 24. But, the ALJ failed to expressly consider the assistance provided by Plaintiff's parents in actually getting him to school, in tutoring him, and in organizing his material. Instead, the ALJ concluded, in essence, that the very fact that Plaintiff obtained a degree is enough to find that Plaintiff exaggerates his limitations. In this case, that is an insufficient discussion of the alleged limitations and how they are either transferable to a work setting or, given the myriad of official and unofficial accommodations, actually undermine allegations of disability.

Second, the ALJ's reasoning is flawed for a separate reason. Cases in the Ninth Circuit and this Court criticize the use of boilerplate language such as this: "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments

could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (internal quotation marks omitted). The use "of this generic language is not itself reversible error." *Id.* at 678 n.6. But, "it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only *then* to determine the claimant's RFC." *Id.* When the ALJ rejects "a claimant's subjective symptoms to the extent they are inconsistent with the above [RFC] assessment, the agency indicates that it is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do." *Id.; see also Carlson v. Astrue*, 682 F. Supp. 2d 1156, 1167 (D. Or. 2010) (faulting this type of analysis because it "reverses the manner in which [the ALJ] must consider credibility").

Here, the ALJ states that Plaintiff's allegations are not credible because he attended college. The ALJ explains that because there "is no objective evidence showing that the claimant would have been unable to perform a simple, repetitive, and routine job with few demands[,] claimant's statements are not fully credible regarding the severity of his conditions." *Id.* The ALJ's RFC limits Plaintiff to simple, routine tasks. Tr. 20. Thus, the rationale, distilled to its essence, is that (1) the objective evidence supports the RFC and therefore, (2) Plaintiff's subjective statements to the contrary are not credible. But, this is just another way of expressing the reasoning disapproved of by the Ninth Circuit where the ALJ rejects subjective symptoms to the extent they are inconsistent with the RFC.

In summary as to Plaintiff's credibility, the ALJ's reasons for rejecting Plaintiff's subjective limitations testimony are not clear and convincing. The ALJ's description of Plaintiff's allegations is unclear. He does not provide a source for the particular allegations noted and the specific allegations recited earlier in the opinion are not fairly captured by the ALJ's later description. The ALJ also failed to acknowledge several other limitations alleged by Plaintiff and his mother regarding his college experience. The ALJ failed to offer an explanation which considered the totality of the allegations and which supports a determination that Plaintiff's activities are transferable to a work setting or contradict a totally disabling impairment. Finally, to the extent the ALJ offered a rationale, he impermissibly found Plaintiff's testimony not credible because it conflicts with the RFC.

## II.  Step Two Error

Plaintiff alleges that the ALJ erred at step two by failing to find his "adjustment disorder with severe anxiety and depression" a severe impairment. Plaintiff acknowledges that Finding of Fact Number 3 includes this impairment in the list of impairments the ALJ found to be severe. Tr. 18. Plaintiff notes that in the following paragraph, the ALJ concluded a discussion of the severe impairments by listing them. Tr. 19. However, the list omitted adjustment disorder with severe anxiety and depression. *Id.* Plaintiff argues that in failing to mention this impairment in the summary discussion, the ALJ introduced ambiguity into the decision which Plaintiff contends was error. He also contends that the error was harmful. Defendant responds that there is no error because the Finding of Fact contains adjustment disorder with severe anxiety and depression as a severe impairment and the failure to repeat that impairment in the following discussion does not amount to legal error. Moreover, Defendant argues, any error is harmless.

Even assuming the ALJ's opinion is ambiguous, I agree with Defendant that any error is harmless. First, the Finding of Fact's inclusion of adjustment disorder with severe anxiety and depression as a severe impairment likely disposes of Plaintiff's argument. Second, an omission of an impairment as severe at step two is not a harmful error when step two is otherwise resolved in the claimant's favor and where the ALJ considers the limitations posed by the impairment in the RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (alleged error at step two was harmless where step two was decided in the claimant's favor); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (where the ALJ considered evidence of limitations posed by claimant's bursitis at step four of the disability analysis, any error in failing to consider bursitis "severe" at step two was harmless). Plaintiff offers only a conclusory assertion that the error was not harmless. Plaintiff fails to show that the ALJ excluded any limitations specifically addressing this particular adjustment disorder. Thus, Plaintiff fails to establish that any error, assuming there is one at all, was harmful.

## III. Medical Opinions

Plaintiff challenges the ALJ's rejection of the opinions of two of his treating practitioners. If the treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If the treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160–61.

If a treating physician's opinion is not given "controlling weight" because it is not

"well-supported" or because it is inconsistent with other substantial evidence in the record, the ALJ must still articulate the relevant weight to be given to the opinion under the factors provided in 20 C.F.R. §§ 404.1527(c)(2)–(6). *Id.* at 1161; *Orn*, 495 F.3d at 632–33. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" which are supported by substantial evidence in the record. *Id*; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

A. Dr. Terdal

1. June 29, 2012 Letter

In a June 29, 2012 letter, Leif Terdal, Ph.D. stated that he provided evaluation and treatment of Plaintiff since Plaintiff was a young child. Tr. 322. Dr. Terdal initially treated Plaintiff for behavioral and academic issues associated with ADHD. *Id.* He noted that Plaintiff is intelligent but that attention deficits "got in the way of classroom rules and performance." *Id.* Plaintiff was never aggressive and he progressed academically. *Id.* However, during his teenage years, Plaintiff developed more serious behavioral issues. *Id.* In about 1991, Dr. Terdal diagnosed Plaintiff with obsessive compulsive disorder. *Id.* Such disorders often begin during the teenage years, tend to be chronic, and often cause moderate to severe disability. *Id.* He opined that "[t]his is the case for [Plaintiff]." *Id.*

The ALJ stated that the June 29, 2012 letter from Dr. Terdal was not an opinion as to Plaintiff's capacity but was an opinion on the ultimate issue of disability. Tr. 21. He explained that statements regarding the disability status of the claimant are given no specific deference. *Id.* (further explaining that opinions on the ultimate issue of disability are reserved for the Commissioner and citing Soc. Sec. Ruling (SSR) 96-5p). The ALJ then stated that he considered

the letter, but, he explained, Dr. Terdal provided no contemporaneous treatment notes that would be consistent with the June 2012 opinion for the purposes of this disability application. *Id.*

Plaintiff argues that the ALJ erred in his treatment of Dr. Terdal's June 2012 letter opinion because he did not assign a specific weight to the opinion and failed to fully consider the opinion consistent with 20 C.F.R. § 404.1527. Plaintiff also faults the ALJ's failure to develop the record by seeking contemporaneous treatment notes the ALJ stated had not been provided.

Other than providing some general statements regarding the history of his relationship with Plaintiff and noting the diagnoses he assigned to Plaintiff initially and then in adolescence, Dr. Terdal offers only the opinion that OCD disorders tend to be chronic, often cause moderate to severe disability, and that this is the case for Plaintiff. That is, Dr. Terdal opined that Plaintiff was moderately to severely disabled. The ALJ's interpretation of Dr. Terdal's June 2012 letter as offering an opinion only as to whether Plaintiff was disabled was reasonable.

Nonetheless, that does not negate the ALJ's duty to consider the opinion and provide the required reasons for rejecting it. *Montague v. Colvin*, No. 3:15-cv-02399-AA, 2017 WL 123439, at *2 (D. Or. Jan. 11, 2017) (explaining that although "the ultimate decision regarding disability is reserved to the Commissioner, 20 C.F.R. § 404.1527(e)(1), the rules governing consideration of medical opinions apply with equal force to opinions on the ultimate issue of disability") (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (explaining that physicians may render medical, clinical opinions or opinions on the ultimate issue of disability; that while the ALJ is "not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability," the ALJ "cannot reject them without presenting clear and convincing reasons for doing so"; and further, that a controverted "treating physician's opinion on disability . . . can be

rejected only with specific and legitimate reasons supported by substantial evidence in the record.")); *see also Ghanim*, 763 F.3d at 1161 ("[A]n ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability."); *Moody v. Berryhill*, No. 6:16-cv-00843-JE, 2017 WL 4740792, at *4 (D. Or. Oct. 11, 2017) ("although it is the Commissioner's sole responsibility to make a finding of disability under the Act, a medical source - such as a treating physician - may still opine as to a claimant's ability to work; in doing so, the Commissioner must then review all of the medical findings and other evidence that support the opinion and provide a specific and legitimate reason for rejecting the opinion").

The only reason offered by the ALJ in support of rejecting the June 2012 opinion is that it lacked contemporaneous treatment notes consistent with his opinion. Tr. 21. Although the ALJ used the word "consistent," suggesting a reference to § 1527(c)(4), that subsection concerns whether the medical opinion is consistent with the record as a whole. 20 C.F.R. § 1527(c)(4). Instead, by referring to the lack of treatment notes by Dr. Terdal to support Dr. Terdal's own opinion, the ALJ appears to have been referring to "supportability" as described in § 1527(c)(3) which provides that "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight" is given to that opinion. 20 C.F.R. § 1527(c)(4). An ALJ may properly reject an opinion that is unsupported by clinical findings. *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Thus, unless the ALJ here had an affirmative duty to contact Dr. Terdal and obtain contemporaneous records, his rejection of the June 2012

opinion was not error.[1]

Under 20 C.F.R. § 1512(a), Plaintiff has the responsibility to prove disability and to submit all evidence that relates to whether or not he is disabled. The regulations also provide that before the agency makes a determination that a claimant is not disabled, it will develop the claimant's complete medical history for at least the twelve months preceding the month in which the application is filed unless there is a reason to believe that development of an earlier period is necessary. 20 C.F.R. § 1512(d)(1) (2015).[2] To that end, the agency will make every reasonable effort to help a claimant obtain medical evidence from the claimant's own medical sources when the claimant gives the agency permission to request such evidence. *Id.* "Every reasonable effort" is defined as making an initial request for evidence from the claimant's medical source and making one follow-up request if the evidence has not been received. *Id.*

Defendant requested that Plaintiff provide information regarding outstanding medical records and to provide the authorization for the agency to obtain them. *E.g.*, Tr. 138-39, 289-95, 299, 300, 301, 306-07. Plaintiff does not appear to argue that the Defendant violated § 1512(d). Instead, the argument is that the ALJ failed to further develop the record. The ALJ has an independent duty to fully and fairly develop the record, whether or not the claimant is represented by counsel. *E.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). But, this duty to *further* develop the record is triggered where "there is ambiguous evidence or when the record is

---

[1] Given the ALJ's discussion, it is clear the ALJ assigned little or no weight to Dr. Terdal's June 2012 opinion and thus, any failure to expressly assign a weight is insignificant or harmless.

[2] I cite to the regulations as they were numbered at the time the ALJ issued his decision. The particular subsection of the regulation has changed but no material changes were made to the regulation's substance.

inadequate to allow for proper evaluation of the evidence." *Mayes v. Massinari*, 276 F.3d 453, 460 (9th Cir. 2001); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) (ALJ had no duty to request more information from Plaintiff's physicians when there was nothing unclear or ambiguous about what they said). Because there was nothing unclear or unambiguous about the June 2012 opinion, the ALJ did not err by failing to obtain contemporaneous treatment records from Dr. Terdal in support of that opinion. Accordingly, the ALJ did not err in rejecting Dr. Terdal's June 2012 disability opinion.

### 2. September 29, 2013 Letter and Functional Assessment

Dr. Terdal wrote another letter on September 29, 2013. Tr. 362-63. He also completed a functional assessment form. Tr. 364-65. Dr. Terdal stated that when Plaintiff turned eighteen, his diagnoses was "[s]everely impaired adjustment disorder consistent with Asperger Syndrome." Tr. 362. He began to evaluate and treat Plaintiff when he was eleven years old and provided psychological evaluations. *Id.* His parents were concerned about Plaintiff's behavior and learning difficulties at school. *Id.* Dr. Terdal found that Plaintiff had superior intelligence with an IQ above 140 on the Wechsler Children's Intelligence Scale, but his behaviors were markedly off track. *Id.* He had difficulty relating to peers, showed repetitious behaviors, and had persistent difficulties participating in the normal give and take of social and emotional relationships with other children. *Id.*

Dr. Terdal stated that his objective diagnostic testing and clinical findings supporting his diagnosis were interviews with Plaintiff's mother and Plaintiff himself, interviews with teachers and staff at Plaintiff's elementary school, and administration of the Wecshler Children's Intelligence Scale. *Id.* In response to a question regarding Plaintiff's ability to work a regular

eight-hour per day job on a sustained basis during the first quarter of 1990, Dr. Terdal wrote that

"[w]ithout substantial support[,] the probability for someone with [Plaintiff's] psychological

problems, related to Asperger's Disorder, to succeed on a work setting is very low."  Tr. 363.

In a two-page functional assessment addressing the time period when Plaintiff was about

eighteen, Dr. Terdal assessed that Plaintiff would have severe limitations in the ability to

complete a normal workweek without interruptions from psychologically-based symptoms and

moderately severe limitations in his ability to complete a normal workday without interruptions

from psychologically-based symptoms.  Tr. 364.  He assessed Plaintiff as having either no, mild,

or moderate limitations in a number of other functional abilities.  Tr. 364-65.

The ALJ gave little weight to Dr. Terdal's opinion that without substantial support,

Plaintiff's ability to succeed in a work setting was very low.  Tr. 21-22.  According to the ALJ,

"the support necessary to support such a conclusion is not discussed."  Tr. 22.  The ALJ

continued:  "For example, it was not discussed whether a production rate paced job would be

precluded versus goal oriented work.  Nor was it discussed whether simple routine tasks would

be beneficial; or whether close supervision; reminders to perform tasks; and/or limited

interaction with coworkers and the public would be appropriate."  *Id.*  "In other words," the ALJ

wrote, "the opinion is essentially that the claimant is 'disabled,' which is a determination left to

the Commissioner of Social Security."  *Id.*

Plaintiff argues that the ALJ failed to discuss much of the letter and the functional

assessment.  Plaintiff also argues that the ALJ's analysis regarding the functional assessment

form is confused because the ALJ suggested the form might be better if augmented but ultimately

stated that the opinion was essentially that Plaintiff was disabled which is a determination left to

the Commissioner.  Plaintiff argues that the ALJ erred by failing to include Dr. Terdal's functional limitations in the RFC.

Defendant argues that the ALJ properly rejected Dr. Terdal's September 2013 opinion because it was not supported by clinical findings, treatment notes, or a sufficient explanation. Additionally, Defendant argues, Dr. Terdal failed to explain what he meant by "substantial support" or whether there would be any conditions under which Plaintiff could work.

Defendant offers reasons to reject Dr. Terdal's September 2013 opinion that the ALJ himself did not provide.  The ALJ noted Dr. Terdal's opinion that Plaintiff would have a low ability to succeed in a work setting without substantial support and noted Dr. Terdal's functional assessment.  Tr. 21. However, as for a reason for giving the opinion little weight, the ALJ stated only that the "support necessary to support such a conclusion is not discussed." Tr. 22.  The ALJ then recited a list of work-related conditions which Dr. Terdal did not discuss, and concluded that Dr. Terdal's opinion was nothing more than an opinion on the ultimate question of disability. *Id.*  The ALJ did not cite the lack of clinical findings or treatment notes as a basis for rejecting Dr. Terdal's September 2013 opinion and functional assessment.  And, the ALJ did not cite a lack of sufficient explanation as a basis for rejecting the functional assessments.   The law requires that I review only the reasons provided by the ALJ, not those offered later by Defendant.  *Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (court cannot affirm the agency on a ground not invoked by the ALJ without violating the *Chenery* rule) (citing *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (stating that a reviewing court may affirm agency action only on "the grounds invoked by the agency")); *see also Trevizo*, 871 F.3d at 677 n.4 (district court erred in looking beyond ALJ's stated reasons and explanation to support ALJ's opinion).

I understand the ALJ's decision as finding fault with Dr. Terdal's opinion because Dr. Terdal did not specifically identify what he meant by "substantial support." This left the ALJ to consider it as an opinion on disability as opposed to a clinical opinion on functional limitation. Curiously, the ALJ makes no mention whatsoever of the actual functional limitation assessments made by Dr. Terdal. There, some of the parameters of what Dr. Terdal possibly meant by "substantial support" may be gleaned. For example, the ALJ faulted Dr. Terdal for not discussing whether simple routine tasks would be beneficial or whether limited interaction with coworkers would be appropriate. Tr. 22. But, Dr. Terdal assessed Plaintiff as having a moderate limitation in the ability to work in coordination with or proximity to others without being distracted, having a mild limitation in the ability to carry out detailed instruction, and having no limitation in the abilities to understand and remember very short, simple instructions or to carry out short and simple instructions. Tr. 364.

The ALJ erred by failing to discuss Dr. Terdal's functional assessments and by failing to consider them as a way to more fully understand what Dr. Terdal meant when he referred to "substantial support." To the extent Dr. Terdal's reference to "substantial support" was unclear, such ambiguity triggered the ALJ's duty to further develop the record by contacting Dr. Terdal and asking for a more detailed explanation. Thus, the ALJ erred by rejecting Dr. Terdal's September 2013 opinion and functional assessment.

B. Dr. Harrington

In 2011, Dr. Leon Harrington, M.D., Plaintiff's psychiatrist, wrote two short notes regarding Plaintiff's diagnoses and limitations. Tr. 321. He stated that Plaintiff has had long-term developmental delays with a diagnosis of Asperger's Syndrome, or "pervasive

developmental disorder." *Id.* He noted that Plaintiff's family reported the onset of communication difficulties at about age three, with social and communication difficulties since that time. *Id.* Plaintiff also developed severe obsessive compulsive symptoms and severe emotional and social deficits. *Id.* Dr. Harrington opined that this condition would be present, and that Plaintiff would be disabled, for the foreseeable future. *Id.*

In letters written by Dr. Harrington in August and September 2013, Dr. Harrington noted that in 1992, when he initially evaluated Plaintiff, Plaintiff had pervasive developmental disorder in the form of Asperger's Syndrome, obsessive compulsive disorder, Tourette's Syndrome in remission, and adjustment disorder with severe anxiety and depression. Tr. 323-25. He noted that at that time, Plaintiff had a number of developmental delays. Although he was taking medication for his OCD, Plaintiff still washed his hands a lot and had difficulty attending classes due to smokers and various contaminants. Tr. 324. Plaintiff discussed his fear of flies and various insects, as well as public restrooms. *Id.* He had few friends and said it was difficult to initiate conversations with people. *Id.*

Dr. Harrington wrote that between October 1992 and March 1994, Plaintiff continued to have these symptoms, although his verbal and motor tics lessened. *Id.* Dr. Harrington observed that Plaintiff's obsessive thoughts, contamination fears, and preoccupation with harmful infection seemed to exacerbate during late high school. *Id.* Before March of 1994, he had difficulty sustaining concentration or attending class for long periods as he became fearful. *Id.* Dr. Harrington gradually increased his medication with gradually lessening of his symptomotology. *Id.* Plaintiff was able to maintain a B- average in college in spite of his disabilities. *Id.*

Dr. Harrington related that Plaintiff's symptoms are constant and not related to avoidance

of uncomfortable situations. *Id.* He is not malingering. *Id.* He has been involved with vocational rehabilitation and has taken several computer-related jobs after college. *Id.* He has had volunteer jobs in computer-science fields but has not been hired. Tr. 325. Dr. Harrington opined that "[o]nce he becomes accustomed to his environment, he is able to perform fairly well as long as there are limited social contacts and the capacity to avoid contaminants." Tr. 324-25. Should Plaintiff become preoccupied with contact with smokers, insects, young children, and other potential sources of contamination, he would not be able to follow through with a long-term employment placement. Tr. 325. Dr. Harrington believed that in all likelihood, Plaintiff would need frequent breaks and "reassurance that the structure of his work situation would allow him to avoid contaminants." *Id.*

Dr. Harrington then described his treatment of Plaintiff since March 1994. *Id.* He noted that Plaintiff has been involved in an adult Asperger's Syndrome support group and had gradually shown more independence and motivation. *Id.* He had been involved in a church group and had some social contacts, primarily through his sister. *Id.* He was now able to stay alone in the home for three to four days, cooking and cleaning himself. *Id.* Nonetheless, while he has made gradual progress, Plaintiff still has difficulty initiating interactions and has a number of constraints on his out-of-home activities due to his obsessions and compulsions. *Id.* While these have lessened some with medication and treatment, there has been only a twenty- to thirty-percent improvement in symptoms. *Id.* According to Dr. Harrington, Plaintiff's long-term prognosis for independent living is poor. *Id.*

Like Dr. Terdal, Dr. Harrington also completed a functional assessment form. Tr. 326-27. He specifically addressed the period from 1990 until March 30, 1994. Tr. 326. He rated

Plaintiff as severely limited in the abilities to complete a normal workday or a normal workweek without interruptions from psychologically-based symptoms. *Id.* He found Plaintiff to have moderately severe limitations in his abilities to perform activities within a schedule, to maintain regular attendance, to be punctual within customary tolerances, to maintain socially appropriate behavior, to adhere to the basic standards of cleanliness and neatness, to respond appropriately to changes in the work setting, and to travel in unfamiliar places or use public transportation. Tr. 326-27. He found Plaintiff to have mild, moderate, or no limitations in several other areas. *Id.*

The ALJ discussed Dr. Harrington's August and September 2013 letters. Tr. 22. He specifically noted Dr. Harrington's opinions that if Plaintiff became preoccupied with certain contaminants, he would be unable to follow through with a long-term employment placement and that he would need frequent breaks and reassurance that the structure of his work situation would allow him to avoid contaminants. *Id.* The ALJ gave this opinion only partial weight because the frequency of the breaks was not delineated. *Id.* Additionally, avoidance of insects was not reasonable, the ALJ found, because insects are present in all settings and Plaintiff successfully completed college without eliminating insects. *Id.* Nonetheless, the ALJ found that the majority of the Dr. Harrington's limitations were accommodated within the RFC. *Id.*

The ALJ gave Dr. Harrington's functional assessments little weight because they were internally inconsistent and "inconsistent with the record as a whole." *Id.* He concluded that the severe limitations in the abilities to complete a normal workweek or workday without interruptions from psychologically-based symptoms and the mild limitation in the ability to perform at a consistent pace without an unreasonable number and length of rest periods, were inconsistent with "Exhibit 7F" which is Dr. Harrington's September 17, 2013 letter, and with

Plaintiff's activities of daily living. *Id.* The ALJ noted that although Plaintiff is moderately limited "per the 'B' criteria," he is capable of performing within the RFC. *Id.*

The ALJ then referred to Dr. Harrington's 2011 notes and in particular, to Dr. Harrington's opinion that he expected Plaintiff to be disabled for the foreseeable future. *Id.* The ALJ rejected this opinion as being inconsistent with Dr. Harrington's other statements and with the record as a whole. *Id.* He also viewed it as a legal opinion on the ultimate question of disability which was reserved to the Commissioner. *Id.*

Finally, the ALJ referred again to Dr. Harrington's August 2013 letter and noted that it provided information regarding Dr. Harrington's treatment of Plaintiff's condition since March 1994, including medication management, family therapy, cognitive therapies, support groups, increased social functioning through a church group, and vocational rehabilitation. Tr. 23 (referring to "Exhibit 6F"). The ALJ noted that there, Dr. Harrington reported that Plaintiff was now able to stay alone at home for three to four days at a time, and was able to "cook and clean for himself." *Id.* The ALJ gave these opinions little weight as they were not supported by any treatment notes or records, were inconsistent with the record as a whole, and were inconsistent with Plaintiff's actual activities and accomplishments. *Id.*

Plaintiff argues that the ALJ erred in giving little weight to Dr. Harrington's opinions. Plaintiff contends that the ALJ's rejection of Dr. Harrington's opinion that Plaintiff would need frequent breaks was error and that the ALJ's determination that Plaintiff would be off task nine percent of the time was arbitrary and capricious. Plaintiff contests the ALJ's statement that the majority of Dr. Harrington's limitations are included within the RFC. Plaintiff also faults the ALJ for failing to specifically identify the alleged internal inconsistencies and the alleged

inconsistencies in the record.  Finally, Plaintiff argues that the ALJ misquoted one of Dr.

Harrington's statements, leading to an improper conclusion regarding Dr. Harrington's report.

Defendant argues that the ALJ's findings are "mostly consistent" with Dr. Harrington's

narrative letter.  As an example, Defendant notes that Dr. Harrington stated that Plaintiff could

perform "pretty well" if he had few social contacts and could avoid contaminants.  The RFC

limits Plaintiff to almost no social interactions and no exposure to common contaminants.  Next,

as an example of an internal inconsistency, Defendant argues that Dr. Harrington's opinion that

Plaintiff could work if he had no exposure to contaminants and no significant social interactions

is inconsistent with Dr. Harrington's conclusion that Plaintiff would have a severe limitation

completing a normal workweek.  Defendant also contends that Dr. Harrington's conclusions that

Plaintiff would be unable to complete a normal work schedule were inconsistent with Plaintiff's

activities as demonstrated by his ability to maintain regular attendance at OSU, graduate with a

degree, perform computer-related jobs after college, being involved in his church, and cooking

and cleaning for himself.[3]  Finally, Defendant notes that the ALJ found that Dr. Harrington's

opinions were not supported by treatment notes, a legitimate reason to reject his opinions.

I agree with Plaintiff that the ALJ erred in rejecting Dr. Harrington's opinions.  The ALJ's

opinion is confusing in at least one respect and fails to be specific enough in several other

respects.  The ALJ discussed Dr. Harrington's August and September 2013 letters at page twenty-

two of his opinion.  Tr. 22 (referring to Exhibits 6F and 7F).  He gave partial weight to Dr.

---

[3]  To be eligible for child's disability insurance benefits, Plaintiff must show, among other
things, disability before the age of twenty-two.   42 U.S.C. § 402(d)(1)(B).  It is unclear why
Defendant emphasizes activities Dr. Harrington indicated have occurred only more recently,
meaning when Plaintiff was in his late thirties or forties.  However, even considering these
activities, I still conclude that the ALJ erred.

Harrington's opinion about the needs for frequent breaks and reassurance that the structure of Plaintiff's work situation would allow him to avoid contaminants. *Id.* Then, he accepted the majority of limitations as accommodated within the RFC. *Id.*

On the next page, the ALJ again discussed the August 2013 letter. Tr. 23 (discussing and referring to Exhibit 6F in the first paragraph). Having already considered the letter, it is confusing to encounter a second discussion of it. This time, the ALJ gave Dr. Harrington's opinions "little weight." *Id.* This is after the ALJ had already given some of opinions in this same letter partial weight and found that the majority of the limitations were accommodated in the RFC. Tr. 22. The ALJ's opinion appears to be internally inconsistent and creates confusion about what parts of the Dr. Harrington's August 2013 letter the ALJ actually accepted and what parts he rejected.

In rejecting some of Dr. Harrington's limitations, the ALJ noted inconsistencies with other evidence. E.g., Tr. 22 (rejecting the "opinion at Exhibit 8F" (the Sept. 2013 functional assessment form) because it is "internally inconsistent and inconsistent with the record as a whole"); *Id.* (rejecting the portion of the functional assessment form regarding completion of a normal workweek and workday without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable length of rest periods because these opinions were "not consistent with Exhibit 7F" (Dr. Harrington's September 2013 letter)); *Id.* (stating that Dr. Harrington's 2011 opinion that Plaintiff would be disabled for the foreseeable future was inconsistent with "other statements of opinion provided by Dr. Harrington" and is "inconsistent with the record as a whole"); Tr. 23 (giving little weight to opinions in Dr. Harrington's August 2013 letter because they are "inconsistent with the record as a whole").

As explained earlier in this Opinion, the ALJ is required to "explain what evidence undermines the testimony." *Treichler*, 775 F.3d at 1103 (internal quotation marks omitted). This requirement applies equally to the rejection of medical opinions. *See Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (ALJ errs when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion"). An ALJ's assertion that a medical opinion is "inconsistent with unspecified 'treatment records' and unidentified evidence in 'the record as a whole' is not specific enough to satisfy the less demanding standards that apply to contradicted opinions of a treating physician." *Traglio v. Colvin*, No. 3:12-cv-01349-JE, 2013 WL 3809549, at *7 (D. Or. July 22, 2013); *see also Hill v. Berryhill*, No. 6:16-cv-02387-AA, 2018 WL 588998, at *4 (D. Or. Jan. 25, 2018) ("The ALJ's general assertion that the doctor's opinion 'is not consistent with the record as a whole and is internally inconsistent,' . . . do[es] not rise to the level of specific and legitimate reasons for rejecting the opinion of a treating medical source" [because] [t]he ALJ's statements fail to cite the record or provide any specific evidence of internal inconsistency or conflicts with the record as a whole") (citing *Garrison*, 759 F.3d at 1012-13).

By relying on unspecified internal inconsistencies and unspecified inconsistencies with the record as a whole, the ALJ's rejection of Dr. Harrington's opinion is without specific, legitimate reasons supported by substantial evidence in the record. Defendant attempts to save the ALJ's error by providing an example of such inconsistencies. Assuming that this does not violate the *Chenery* rule noted above, Defendant's contentions are unconvincing.

Defendant argues that Dr. Harrington's statements in his letter that Plaintiff "performed pretty well, as long as he was not exposed to contaminants and significant social interactions" is inconsistent with Dr. Harrington's assessment that Plaintiff was severely limited in his abilities to complete a normal workday and workweek without interruption from psychologically-based symptoms. The complete statement by Dr. Harrington is that "[o]nce he becomes accustomed to his environment, he is able to perform fairly well as long as there are limited social contacts and the capacity to avoid contaminants." Tr. 324-25. Dr. Harrington continued by noting what would occur if Plaintiff should become preoccupied with sources of contamination. Tr. 325. He concluded this particular paragraph by stating that "[i]n all likelihood, [Plaintiff] would need frequent breaks and reassurance that the structure of his work situation would allow him to avoid contaminants." *Id.*

Dr. Harrington's narrative, especially his statements that Plaintiff could perform "fairly well," "*once accustomed to his environment*," and that he would need "*frequent breaks and reassurance*," support rather than detract from his assessment that Plaintiff's ability to complete a normal workday and workweek are severely impaired. Defendant's example cherry picks isolated statements from Dr. Harrington's letter which, when read in its entirely, indicates that Plaintiff has struggled with symptoms since Dr. Harrington began treating him in October 1992, has difficulty sustaining concentration, requires time to adjust to environments, requires regular reassurance regarding exposure to what he perceives to be contaminants, and only recently has been able to be left home alone for a few days at a time. The inconsistency asserted by Defendant does not support the ALJ's rejection of Dr. Harrington's functional assessments.

The ALJ also rejected some of Dr. Harrington's opinions because they are inconsistent

with Plaintiff's "actual activities and accomplishments." Tr. 23. Again, the ALJ provides no specific examples of the activities and accomplishments that undermine Dr. Harrington's opinions. Defendant argues that Plaintiff's graduation from OSU shows that he is able to overcome his difficulties and maintain regular attendance. He missed no class because of his gum obsession. And, Defendant continues, after college he did several computer-related volunteer jobs, was involved in his church, and could cook and clean for himself. Defendant's argument omits critical information, previously discussed above, about how Plaintiff was able to make it through college: taking reduced classes, being driven there by his parents, being tutored by his parents, etc. Nothing about Plaintiff's college experience supports a conclusion that he could maintain regular attendance at a forty-hour per week job. And, nothing about his other post-college experiences supports such a conclusion either. The record contains no information about how many hours per week Plaintiff volunteered, how he got there, whether he needed reminders, or whether he needed additional support to perform tasks.

Plaintiff also correctly points out that the ALJ misquoted Dr. Harrington by stating that Plaintiff can cook and clean for himself. Defendant repeats the error in her Response Brief. Def.'s Brief 9. Dr. Harrington reported that Plaintiff "is now able to stay alone in the home for periods of three to four days, cooking and cleaning himself." Tr. 325. In his functional assessment, he reported that Plaintiff had a moderately severe limitation in "adhering to basic standards of neatness and cleanliness." Tr. 327. Plaintiff's mother reported that Plaintiff needed to be reminded to change clothes, bathe regularly, and comb his hair. Tr. 267. Plaintiff also alleged that he does not bathe often and that his parents need to remind him to comb his hair. Tr. 250. Thus, the record does not support a finding that Plaintiff can "cook and clean for himself."

Instead, the record shows that he struggles with basic standards of cleanliness and only recently achieved a level of independence where he can cook for himself and keep himself clean for a few days at a time. Even if the ALJ's statement about Plaintiff's ability to "cook and clean for himself" was accurate, that ability still shows that Plaintiff cannot take care of himself for more than three or four days at a time. That means that he is not independent for a significant amount of time. The record, contrary to Defendant's assertion, does not support a conclusion that Dr. Harrington's opinions are undermined by Plaintiff's activities.

Defendant, and the ALJ, also note the lack of treatment notes supporting Dr. Harrington's opinion. Tr. 23. But, there are several pages of treatment records in the Administrative Record. Tr. 328-59. While many are almost illegible, it was error for the ALJ to reject Dr. Harrington's opinion for a lack of treatment notes or records. If the ALJ could not read them, that triggered a duty by the ALJ to make further inquiry of Dr. Harrington to explain them.

Finally, Plaintiff faults the ALJ's RFC limitation to Plaintiff being off task nine percent of the time. Plaintiff addresses this issue as part of his argument that the ALJ erred in rejecting Dr. Harrington's opinion because as Plaintiff sees it, this limitation represents the ALJ's attempt to give partial weight to Dr. Harrington's opinion that Plaintiff would need frequent breaks. Dr. Harrington opined that Plaintiff had a "mild" limitation in the ability to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 326. "Mild" in this instance means that the person is able to perform the designated task or function but will have noticeable difficulty no more than ten percent of the workday or workweek. *Id.* Dr. Terdal gave the same opinion. Tr. 364. The vocational expert testified that a worker off task ten percent or more of the day could not sustain work. Tr. 43.

The ALJ provides no explanation for the nine-percent figure. Other than rejecting Dr. Harrington's and Dr. Terdal's opinions, he provides no rationale for how he concluded that Plaintiff would be off task only nine percent of the time. I agree with Plaintiff that the nine-percent figure is arbitrary and without foundation.

In summary as to Dr. Harrington, the ALJ's decision is confusing and fails to specify the alleged inconsistencies the ALJ relies on to undermine Dr. Harrington's opinions. Defendant's discussion of the alleged inconsistences does not support the ALJ's conclusions. The ALJ erroneously relied on a lack of treatment notes. And, the ALJ's limitation to Plaintiff being off task nine percent of the time is not supported by an explanation or by citation to evidence in the record.

## IV. Step Three Error

Plaintiff alleges that the ALJ erred by not finding him disabled at step three. The ALJ considered whether Plaintiff's impairments, either singly or in combination, met or medically equaled, the criteria of Listing 12.02 which, at the time of the ALJ hearing, addressed "organic mental disorders." Tr. 19; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02 (2015). Listing 12.02 requires a claimant to satisfy the "A Paragraph" criteria and either the "B Paragraph" or the "C Paragraph" criteria. *Id.*, §§ 12.00A, 12.02. The A Paragraph criteria address medical findings. The ALJ made no express finding regarding the A Paragraph criteria of Listing 12.02, indicating that he found any one of Plaintiff's severe impairments to satisfy that requirement.

The B Paragraph criteria require Plaintiff to show that he has at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence,

or pace; or (4) repeated episodes of decompensation. *Id.*; § 12.02B. The ALJ found that Plaintiff had moderate difficulties in the first of these three functional categories and that Plaintiff had not had repeated episodes of decompensation. Tr. 19.

The C Paragraph criteria for Listing 12.02, as of the date of the ALJ's decision, required Plaintiff to establish that he has a medically documented history of a chronic organic mental disorder of at least two years, that has caused more than a minimal limitation of the ability to do basic work activities, with symptoms or signs currently attenuated by medication or psycho-social support, and one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Pt. 404, Supt P. App. 1, § 12.02C (2015). The ALJ found that Plaintiff met none of the C Paragraph criteria. Tr. 19.

Plaintiff argues that he meets the C Paragraph criteria based on Dr. Harrington's statement that Plaintiff is "now able to stay alone in the home for periods of three to four days, cooking and cleaning himself." Tr. 325. Plaintiff contends that this statement establishes that Plaintiff has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause him to decompensate, in satisfaction of Listing 12.02C2. Alternatively, he argues that this statement by Dr. Harrington establishes a current history of one or more years' inability to function outside a highly supportive living arrangement, with indication of continued need for such an arrangement,

in satisfaction of Listing 12.02C3. Plaintiff notes that the record shows he has lived only with his parents, cannot take care of himself on a regular and continuing basis, requires monthly psychiatric monitoring and therapy, and his long term prognosis for independent living is poor.

Defendant argues that Dr. Harrington's letter does not show that Plaintiff would decompensate under stress, but merely that he may not follow through with long-term employment. Defendant also contends that Dr. Harrington's letter shows that Plaintiff has improved over time, gradually becoming more independent and motivated, not less. And, in any event, Defendant argues, because the ALJ properly rejected Dr. Harrington's opinion, he was not required to accept that opinion at step three.

For the reasons already discussed, the ALJ's rejection of Dr. Harrington's opinions was error and thus, his opinions must be considered in analyzing the step-three argument. I agree with Defendant that Dr. Harrington's letter does not conclusively establish that Plaintiff has a "marginal adjustment" such that even a minimal increase in mental demands or change in environment would likely cause him to decompensate. But, I reject Defendant's contention that Dr. Harrington's opinion does not establish the presence of Listing 12.02C3's requirement. It is true that Dr. Harrington's letter indicates that Plaintiff has shown some improvement. But, despite such improvement, Plaintiff still lives with his parents, relies on them for support, including reminders related to basic hygiene, and cannot yet live independently. Thus, he shows a current history of one or more years' inability to function outside of this highly supportive living environment with an indication of a continued need for this level of support. I agree with Plaintiff that the ALJ erred in failing to find Plaintiff disabled at step three under Listing 12.02.

/ / /

## V. Lay Witness Testimony

The ALJ rejected the testimony of Plaintiff's mother. Tr. 23. The sole reason he offered in support of this conclusion was that her testimony was inconsistent with Plaintiff's ability to complete college. *Id.* The ALJ referred to Plaintiff having a more limited college experience than normal due to his accommodations and a limited course load. *Id.* But, the ALJ reasoned, Plaintiff attended classes for five to six years, completed his coursework, maintained a cumulative grade point average of 3.0 to 3.3, and graduated with a degree. *Id.* Thus, the ALJ gave limited weight to Plaintiff's mother's statements of disabling limitations that would preclude basic work demands.

For the reasons discussed above in connection with Plaintiff's subjective testimony, I agree with Plaintiff that the ALJ erred. While the ALJ need only give reasons "germane to the witness" when discounting the testimony of lay witnesses, *Valentine*, 574 F.3d at 694, the ALJ's failure to consider all of the facts regarding how Plaintiff managed to obtain his degree makes the ALJ's reasoning flawed. As noted above, Plaintiff had official accommodations in the form of a note taker, open-book exams, and extra time for exams. He also had unofficial accommodations in the sense that he took only two classes per term, he relied on his parents to actually get him to school, his parents tutored him every night, and his mother organized his materials. Plaintiff's ability to get a college degree, without examining the entire context of how that occurred, is not a germane reason to reject Plaintiff's mother's testimony.

## VI. Other Errors

Given the discussion thus far, I decline to resolve any other alleged errors.

/ / /

VII. Remand for Benefits

In social security cases, remands may be for additional proceedings or for an award of benefits. *E.g., Garrison*, 759 F.3d at 1019 (explaining that if "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded[,]" but "in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits") (internal quotation marks omitted). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.; see also Treichler*, 775 F.3d at 1101 (when all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule" of remanding to the agency).

In this case, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony, his mother's testimony, Dr. Terdal's opinions, and Dr. Harrington's opinions. Thus, step one is satisfied. There are parts of the record that could be more fully developed. In particular, the ALJ could further develop the record by requesting that Dr. Terdal specify what he meant by "substantial support." However, given that Dr. Harrington's opinions show that Plaintiff is disabled at step three, Dr. Terdal's opinions are not needed to establish disability.

Moreover, the record, when viewed as a whole, strongly suggests that Plaintiff is disabled. There is no contrary medical evidence from any treating or examining provider. Plaintiff's limitations are well-documented and undisputed. The only outstanding issue is whether those limitations are disabling within the statutory definition. The ALJ's reasoning finding Plaintiff not disabled is flawed. When the improperly discredited evidence, particularly from Dr. Harrington and Plaintiff's mother, is credited as true, the ALJ would be required to find Plaintiff disabled. This case is one of the rare circumstances where remand for an award of benefits is appropriate.

## CONCLUSION

The Commissioner's decision is reversed and this case is remanded for an award of benefits.

IT IS SO ORDERED.

Dated this ___6___ day of ___June_____, 2018

_____
Marco A. Hernandez
United States District Judge